DANIEL HENDERSON,

          Plaintiff,

v.                                          Case No. 23-CV-269

OFFICER JACKELS, *et al.*,

          Defendants.

## DECISION AND ORDER

Plaintiff Daniel Henderson, who is representing himself and currently confined at Kettle Moraine Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Henderson was allowed to proceed on a claim against defendant Officer Tyler Jackels pursuant to the Eighth Amendment for failing to address Henderson's complaints about chest pains. He was also allowed to proceed on a claim against defendant Officer Justin Bublitz pursuant to the Eighth Amendment because, upon his return from the hospital, Bublitz placed Henderson in a filthy cell with feces.

The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF No. 36.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 9, 23.)

### PRELIMINARY MATTERS

The defendants argue that Henderson failed to follow Federal Rule of Civil Procedure 56 and Civil Local Rule 56 when responding to their motion for summary

judgment because his response to their proposed findings of fact does not rely on admissible evidence. (ECF No. 59 at 2-3.) As such, the court should construe their proposed findings of fact as unopposed.

District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Henderson's response materials do not formally comply with the rules, they contain sufficient facts and evidence to allow the court to rule on the defendants' summary judgment motion. Henderson also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Henderson's submissions where appropriate in deciding defendants' motion.

## FACTS

*Henderson's Heart Issue*

In October of 2022, Henderson was incarcerated at the Waukesha County Jail. (ECF No. 50, ¶ 1.) At the time, he had been convicted and was being held on an "order to detain" by the Wisconsin Department of Corrections (DOC). (*Id.*, ¶ 6.) On October 28, 2022, Henderson was in administrative segregation. (*Id.*, ¶ 17.) Jackels was assigned to walk through the administrative segregation housing pod and every 30 minutes look into the cells to ensure that the prisoners were "not in distress or in need

2

Case 2:23-cv-00269-WED   Filed 07/22/24   Page 2 of 11   Document 63

of assistance." (*Id.*, ¶¶ 14. 18.) At approximately 7:11 a.m., Jackels delivered mail to Henderson's cell and states that he did not notice "anything concerning." (*Id.*, ¶ 20.) He then performed two more cell checks on Henderson in the 7 o'clock hour and again states he "did not notice anything out of the ordinary." (*Id.*, ¶ 21.) Henderson asserts that by that time he was not properly breathing and "was clearly about ready to die." (*Id.*)

At approximately 8:39 a.m., Jackels performed another cell check and noticed Henderson was standing near his cell door. (ECF No. 50, ¶ 22.) Jackels noticed that Henderson "was upset or distressed about something." (*Id.*, ¶ 23.) Jackels asked Henderson if he was okay, and when Henderson responded, "something to the effect of 'not really,'" Jackels asked Henderson how he could help. (*Id.*) Jackels states that Henderson told him "no, it is not something you can help with." (*Id.*) Jackels also states that Henderson did not ask for medical attention at that time. (*Id.*, ¶ 24.) Jackels asserts he did not "believe Mr. Henderson was experiencing any medical or mental health issue or at risk of harm which warranted immediate medical attention or intervention." (*Id.*, ¶ 25.) Henderson asserts that it "was clear that [he] was having a difficult time trying to breathe [and that] Officer Jackels failed to recognize the warning signs of Mr. Henderson's medical emergency." (*Id.*)

At approximately 9:05 a.m., Jackels checked on Henderson again and "did not notice anything concerning about Mr. Henderson." (ECF No. 50, ¶ 26.) Henderson then attempted to get Jackels's attention, and Jackels returned to Henderson's cell. (*Id.*, ¶ 27.) Jackels states that Henderson complained to him that "his medical concerns were

3

[not] being properly addressed at the jail." (*Id.*, ¶ 28.) Jackels asked Henderson how he could help, and Henderson told him he wanted to talk with a Lieutenant or a nurse to discuss his medical concerns. (*Id.*) Henderson states that he expected Jackels to immediately notify a Lieutenant or a nurse because he was in medical distress. (*Id.*, ¶ 29.) Jackels states that during this conversation "he did not notice anything that made him think Mr. Henderson was a risk of harm or that he needed immediate medical care." (*Id.*, ¶ 30.) Henderson states that it was clear he was not breathing properly, and at some point he stopped breathing. (*Id.*) Henderson also states that his complaints about medical care were not about the lack of medical care in general but about the lack of medical care that he needed in that moment. (*Id*, ¶ 31.)

After speaking with Henderson, Jackels told non-defendant Pod Officer Czech (no first name provided) about his conversation with Henderson. (ECF No. 50, ¶ 32.) He also told Czech that Henderson wanted to speak to a Lieutenant or a nurse but that there was not a need for immediate medical care. (*Id.*, ¶¶ 32-33.) Czech stated that, because there was no need for immediate medical care, Henderson could fill out a medical request slip to see a nurse. (*Id.*, ¶ 33.)

Video evidence shows (ECF No. 38-1 at 9:12:48) that, at approximately 9:12 a.m., another prisoner appears to be talking with Henderson at his cell door. (ECF No. 50, ¶ 35.) A few minutes later, that prisoner is seen using the intercom in the dayroom. (ECF No. 38-1 at 9:15; ECF No. 50, ¶ 36.) When the prisoner told Czech that Henderson was not doing well, Czech got on the intercom to talk to Henderson, who simply stated "chest." (ECF No. 50, ¶ 37.) It was apparent to Czech that Henderson

4

was experiencing labored breathing. (*Id.*) At that point, as the video shows (though there is no audio), Jackels and several other officers respond to Henderson's cell. (*Id.*, ¶ 38; ECF No. 38-1 at 9:20.) Jackels states that Henderson was conscious, speaking, and standing. (ECF No. 50, ¶ 39.) Henderson states that he was not breathing and unconscious. (*Id.*) He also asserts that he was removed from his cell because CPR needed to be performed. (*Id.*, ¶ 41.)

It is clear from the video that, when Henderson was removed from his cell, he was unable to stand and in apparent distress. (ECF No. 38-1 at 9:24.) The staff appear to be acting with some urgency and, within minutes, an AED machine is applied to Henderson's chest and an officer begins doing chest compressions. (*Id.*, at 9:24-9:32.) Emergency Medical Personnel were called and Henderson was immediately taken to the hospital. (*Id.* at 9:32-9:40.) A few days after the incident, Jackels came to Henderson's cell and apologized. (ECF No. 50, ¶ 44.) Jackels states he apologized for "how things played out," not because he "did anything wrong." (*Id.*)

*The Conditions of Henderson's Cell*

Henderson returned to the jail on October 29, 2022.[1] (ECF No. 50, ¶ 57.) At the time of his return, the jail did not have any holding or medical cells available, so non-defendant Lt. Compton (no first name provided) placed Henderson into cell "TC3, which is typically used for inmates who are not appropriate for a regular cell;" in other words, a cell for suicidal inmates. (*Id.*) The placement was only temporary until a

---

[1] In their proposed findings of fact and summary judgment brief the defendants state that Henderson returned on October 28, 2022. But the record and later proposed findings of fact indicate that the correct date is October 29, 2022.

5

medical or holding cell became available. (*Id.*, ¶¶ 60-62.) Cell TC3 was designed to allow "officers to closely monitor inmates on a regular basis." (*Id.*, ¶ 60.) The defendants state that Henderson "had all the privileges" he was entitled to including a uniform, food, a book, and a mattress even though he was placed in a cell for suicidal inmates. (*Id.*, ¶ 62.) Henderson states that he did not have all his privileges because he had no running water, sink, or toilet to use. (*Id.*, ¶ 64.) He also states he was forced to sleep on the floor. (*Id.*, ¶ 65.)

On October 29, 2022, Bublitz performed the first check-in on Henderson. (ECF No. 50, ¶ 67.) During his check, Bublitz "did not observe anything unsanitary about the cell." (*Id.*, ¶ 69.) Henderson asked Bublitz why he was placed in a suicide cell and when he would be moved to a different cell. (*Id.*, ¶ 70.) Bublitz does not remember Henderson complaining about the filthy state of his cell, and Henderson does not assert he told Bublitz about the condition of his cell. (*Id.*¸¶¶ 71-72.) Because Bublitz's shift ended approximately an hour and a half later, he did not have any more interaction with Henderson. (*Id.* at ¶ 67.)

However, it is undisputed that Compton had several conversations about the condition of Henderson's cell with Henderson, and Henderson at one point told Compton that there were spots of human feces in the cell. (ECF No. 50, ¶ 77.) It is also undisputed that later on that evening Henderson was removed from the cell so it could be cleaned. (*Id.*, ¶ 78.) Henderson was placed in a holding cell two days later, on October 31, 2022. (*Id.*, ¶ 79.)

6

# SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*Eighth Amendment Failure to Protect Claim*

Henderson claims that Jackels failed to prevent him from suffering a cardiac incident because he ignored all the signs that indicated Henderson was suffering from a medical emergency. Under the Eighth Amendment, "prison officials must take reasonable measures to ensure an inmate's safety." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). "To state a claim premised on prison officials' failure to protect him from harm, [a plaintiff] must allege that the defendants knew of and disregarded an 'excessive risk' to his 'health and safety.'" *Id.* (citing *Farmer*, 511 U.S. at 837).

There is a question of material fact as to whether Jackels was aware that Henderson was suffering from a medical emergency. Taking the facts in a light most favorable to Henderson, Henderson states that Jackels saw he was having difficulty breathing on several occasions. He also asserts that he asked Jackels to get him immediate help either by contacting a Lieutenant or a nurse. Instead, Jackels informed the Pod Officer, Czech, that Henderson wanted to complain about lack of medical care in general, so Czech did not contact health services. A reasonable factfinder could conclude that Jackels was aware that Henderson was suffering some sort of medical emergency evidenced by his shortness of breath and his demands to see a nurse of Lieutenant.

The fact that Henderson experienced a serious cardiac event so soon after he spoke with Jackels also is evidence that Jackels disregarded an excessive risk to

8

Henderson's health and safety. A reasonable factfinder could conclude that Henderson must have been experiencing symptoms that suggested an excessive risk to health and safety. To be found liable under the Eighth Amendment, a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Whether a prison official had the requisite knowledge is a "question of fact", *id.*, and here a reasonable factfinder could conclude that Jackels was aware that Henderson was suffering or about to suffer a medical emergency.

Summary judgment as to the claim against Jackels is denied.

*Eighth Amendment Conditions of Confinement Claim*

Henderson claims that Bublitz violated his Eighth Amendment rights because he knew he was in a filthy cell covered in human feces. However, it is undisputed that Bublitz had one limited interaction with Henderson, and Bublitz was not informed about the state of Henderson's cell. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). As a matter of law, Bublitz cannot be held liable. Henderson has failed to establish that Bublitz was aware of or responsible for the cleanliness of his cell. Henderson offers no evidence that Bublitz was aware of the

feces in the cell or that Henderson complained to Bublitz about the condition of the cell.

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)).

Because Henderson does not demonstrate that Bublitz was responsible for the state of his cell, or aware that there was any problem with the cell, summary judgment is granted in Bublitz's favor.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted in favor of Bublitz and he is dismissed. The defendants' motion is denied as it seeks summary judgment on Henderson's claim against Jackels.

The court will set a status conference to discuss further scheduling.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 36) is **GRANTED in part and DENIED in part**. Officer Bublitz is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 22nd day of July, 2024.

BY THE COURT

_William E. Duffin_
WILLIAM E. DUFFIN
United States Magistrate Judge
